JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
The defendant-appellant, Steve Newberry, appeals his conviction, following a jury trial on three counts of assault on a police officer, in violation of R.C. 2903.13(A), fourth-degree felonies, and on one count of resisting arrest, in violation of R.C. 2921.33(A), a second-degree misdemeanor. The trial court sentenced him to an eighteen-month prison term. In his two assignments of error Newberry contends that (1) the trial court abused its discretion when it admitted into evidence an audiotape of his 911 telephone calls, and (2) the conviction was against the manifest weight of the evidence.
On November 15, 2001, about 12:40 a.m., Cincinnati police officers Charles Neeley, Craig Gregoire, and Dan Carder were dispatched by radio to Newberry's residence at 6612 East Ledge Street following a callback by a 911 operator to a woman who identified herself as Mary Jernigan and reported that she had been assaulted by Newberry. Officers Neeley and Gregoire testified that when Newberry opened the door, he fit the description given to them by the 911 dispatcher. They requested to talk to the woman who had answered the 911 callback to determine that she was not injured. Newberry told them to leave, but suddenly became enraged and began yelling. He shoved Officer Neeley and hit him in the face with his fist. Officer Carder, who had been watching the back door, came to the front when he heard the commotion. The struggle between the officers and Newberry had moved inside the house, and Officer Carder tore the storm door off its hinges to enter. Newberry kicked Officer Gregoire in the chest. Subsequently, the officers and Newberry fell to the floor. According to the officers, after he was told he was under arrest, Newberry fought even harder. Officer Carder sprayed Mace on Newberry, who then kicked him in the leg near the groin. The officers used their nightsticks on Newberry's legs in an effort to subdue him enough to handcuff him. The officers subsequently found Jernigan upstairs on the bedroom floor. She was unconscious with bruises on her face and "blood bubbles" coming from her nose. They called for paramedics, and she was removed to the hospital.
Newberry's account, however, was that he and Jernigan had been arguing and had slapped each other, but that they had gone to bed by the time the police arrived. When he opened the door and the officers entered, Newberry said, he protested their entry without a warrant. He testified that because the officers wanted to talk to Jernigan, he walked them over to the stairs and called her. He said that they then handcuffed him, and as they led him from the residence, the officers knocked him down and beat him. Although Jernigan admitted that the officers found her on the bedroom floor, she generally corroborated Newberry's testimony.
Newberry challenged the credibility of the officers' testimony and denied that he had assaulted them, claiming that, after he was sprayed with mace, he suffered a seizure and remembered nothing. He further explained that his bizarre conversations with the 911 operator were the result of experiencing seizures that day.
On the morning of trial, Newberry's counsel argued a pretrial motion in limine to exclude the audiotape of three telephone calls by Newberry to 911 operators, contending that his vulgar and agitated statements and complaint about not being permitted to enter a Clifton bar were not relevant, as they were made before the police officers arrived at Newberry's residence and would only serve to inflame the jury. After hearing arguments by counsel for Newberry and the prosecutor, the trial court overruled the motion in limine. When the state introduced the audiotape and played it for the jury, Newberry's counsel did not renew the motion in limine or object. Therefore, any error related to the audiotape's admission that did not rise to the level of plain error has been waived. See State v. Maurer
(1984), 15 Ohio St.3d 239, 259, 473 N.E.2d 768, 787-788, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 239; see, also, State v. Well (Dec. 21, 1994), 1st Dist. No. C-940307.
Newberry's statements on the 911 audiotape were indicative of his emotional state leading up to the police officers' arrival and were thus probative of why police were dispatched to his residence in response to the report of domestic violence. See Evid.R. 402. Reviewing only for plain error, we cannot say that their probative value was so substantially outweighed by the danger of unfair prejudice that their admission affected a substantial right of Newberry. See Evid.R. 103(A); see, also, Evid.R. 403; State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343, paragraph two of the syllabus. Because we conclude that the admission of the evidence did not rise to the level of plain error, we overrule Newberry's first assignment of error.
In his second assignment of error, Newberry contends that his conviction was contrary to the manifest weight of the evidence. Newberry was found guilty of three counts of assault in violation of R.C. 2903.13(A), which states, "No person shall knowingly cause or attempt to cause physical harm to another * * *." He was also found guilty of resisting arrest in violation of R.C.2921.33(A), which states, "No person, recklessly or by force, shall resist or interfere with a lawful arrest of another."
When considering the merits of a weight-of-the-evidence challenge, an appellate court sits as a "thirteenth juror" and reweighs the evidence to determine if the jury erred in reaching its verdict. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541; see, also, State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Reversal on this basis is reserved strictly for the exceptional case and cannot be based on any mathematical formula. See State v. Thompkins,78 Ohio St.3d at 387, 1997-Ohio-52, 678 N.E.2d 541.
Our review of the record fails to persuade us that the jury, sitting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See id. The jury was entitled to reject Newberry's and Jernigan's explanation that the police burst into their home. The state presented ample evidence that Newberry directed aimed blows at police officers responding to a 911 call for assistance made by Jernigan. As the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact to determine, see State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus, the jury, in resolving conflicts in the testimony, could properly have found Newberry guilty of the charged crimes. The second assignment of error is overruled.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman and Sundermann, JJ.